GEORGE DAVIS and another, complainants, *vs.* EBENEZER STEVENS and another.

In trial of a complaint for flowage, the complainants introduced nine deeds of warranty, given to them by as many heirs of A. C., deceased, each conveying an undivided tenth part of the real estate of which A. C. died seized and possessed; a deed of quitclaim to them, of the remaining tenth given by an execution creditor of the tenth and last heir of A. C., based on a void levy; and a deed of quitclaim to them, given by the widow of A. C., in which deed the grantor is described as the "widow of A. C., deceased," and the premises therein as " all the real estate that the said A. C. owned at the time of his death," all which deeds were duly executed, delivered, and recorded, after the decease of

A. C., *Held*, (1) That the evidence did not show the complainants to be sole owners of the premises mentioned in the deeds; and (2) That the deed of quitclaim from the widow conveyed only a right of dower in the premises.

An execution, issued on a judgment rendered on default of an absent defendant in a personal action, as provided in R. S., c. 82, § 3, within one year after the rendition of such judgment, and without the plaintiff's first giving bond to the defendant, as provided in § 4, is void; and so also is any levy upon real estate made under it, against whomsoever it is adversely set up.

ON REPORT.

COMPLAINT, under R. S., c. 92, for flowing the "homestead farm of Aaron Collins, late of Liberty," in this county, "deceased."

Plea, general issue, with brief statement denying the complainants' title to the land flowed, and alleging title in the respondents.

The maintenance of the mill and dam, and the flowing of the land described in the complaint, were admitted as alleged in the complaint. It was also admitted that the complainants were in possession of the land flowed.

To prove their title to the premises flowed, the complainants introduced nine deeds of warranty to themselves, each conveying one-tenth part undivided of the "homestead of the late Aaron Collins," and signed by the following persons respectively, heirs of the said Aaron Collins, viz.: Rachel Stubbs, dated April 21, 1864; Eleanor Butler, dated July 27, 1864; Angeline B. Wiggin, dated July 5, 1864; M. A. Fogg, dated April 29, 1864; J. R. Collins, dated April 29, 1864; Ira O. Collins, dated April 19, 1864; A. C. Collins, dated April 19, 1864; Hosea Collins, dated April 18, 1864; S. Sturdivant, Aug. 8, 1864. And a deed of quitclaim to themselves, signed by Joel W. Haskell, dated April 5, 1865, purporting to convey the grantor's "right, title, and interest" to an undivided tenth part of the "homestead farm of the late Aaron Collins," his right, title, and interest being what was secured by a levy, hereinafter mentioned, on an execution against one John C. Collins, who was also heir of the late Aaron Collins.

And a deed of quitclaim, dated April 19, 1864, given to the complainants by Cassa E. Collins, who describes herself in her deed as "the widow of Aaron Collins, late of Liberty, deceased," and the

premises to which she "quitclaims her right, title, and interest," as "all the real estate said Aaron owned at the time of his death."

All of the deeds mentioned were duly executed, delivered, and recorded.

The respondents introduced, against the seasonable objections of the complainants, a writ in favor of one Joel W. Haskell, against John C. Collins, dated Aug. 3, 1864, by virtue of which, as by the return thereon appeared, a general attachment of John C. Collins' interest in real estate, in this county, was attached; but no service was made on Collins because he resided in Magnola, Illinois. Also a record of the court, showing that the writ was entered at the term to which it was made returnable, to wit, October term, 1864, of this court, for this county; that at the same term, notice of the pendency of that suit was ordered to be published in the "Progressive Age," a newspaper printed and published in Belfast, and the action continued to the January term, 1865, when the notice, as ordered, was proved; that there was no appearance for said John C. Collins, whereupon he was defaulted and judgment rendered against him on Jan. 18th, and execution thereon issued on Feb. 18, 1865.

A copy of the execution, officer's return, and certificate thereon, were also put in.

It was admitted that Haskell did not file the bond provided in R. S., c. 82, § 4.

The case was taken from the jury and reported to the full court, who were to render judgment according to the legal rights of the parties.

*J. W. Knowlton,* for the complainants.

1. The deed from Cassa E. Collins to complainants, with the possession of the complainants, makes out their title. *Blethen* v. *Dwinel,* 34 Maine, 133. *Williamson* v. *Carlton,* 51 Maine, 449.

Cassa E. Collins' deed does not convey any greater or less estate because she describes herself as the widow of Aaron Collins, than it would have done if she had described herself as the widow of Aaron Burr.

The court are not to draw inferences, but to render a legal judgment upon the legal evidence.

The widow might have become the sole owner of her husband's estate by will of her husband; or by purchase from the heirs, or administrator; and then her husband would have "owned" the whole "at the time of his death."

2. The complainants' title is perfect by the other ten deeds. *Blethen* v. *Dwinel* and *Williamson* v. *Carlton*, *supra*.

The record introduced by the respondents was inadmissible, because .

1. If the execution was illegally issued, the respondents cannot avail themselves of it. They are not a party to that action; claim no title to the land; nor does it appear that their grantors ever had any title to it. Nor are their liabilities or interests anywise affected by it. The damage done by the claim is no greater or less by reason of the levy. The claim of the complainants, under the levy, is no more adverse to the respondents' title or rights, than were those of John C. Collins.

"It is open to all who are in any way connected with the title, or against whom it is adversely used." *Smith* v. *Dow*, 51 Maine, 21. And where a judgment is recovered contrary to law, and is prejudicial to a third party, he should have a right to avoid it." *Downs* v. *Fuller*, 2 Met. 139.

This levy not appearing to be "adverse" or "prejudicial" to the respondents' title or rights, the record evidence is not legally admissible.

2. The respondents, by their brief statement, claim title in themselves, and not in John C. Collins, as their evidence tends to prove. *Day* v. *Frye*, 41 Maine, 326. *Simpson* v. *Hardy*, 42 Maine, 196. *Solon* v. *Rowell*, 49 Maine, 330. *Cooper* v. *Ames*, 6 Cush. 87.

*W. G. Crosby*, for the respondents.

1. The claimants must prove themselves sole owners of the land flowed; it is not enough for them to prove that they own an undivided part thereof. *Tucker* v. *Campbell*, 36 Maine, 346.

The levy transferred no title to Haskell, because the execution was not issued in accordance with R. S., c. 82, §§ 3 and 4.

The giving of the bond was a prerequisite to the issuing of the execution; and it not having been given, the execution issued illegally, and the levy was void. *Penniman* v. *Cole*, 8 Met. 496. *Buffum* v. *Ramsdell*, 55 Maine, 252.

According to modern decisions, the right to contest such proceedings is not limited as formerly, but it is open to all who are in any way connected with the title, or against whom it is adversely used. *Smith* v. *Dow*, 51 Maine, 21. *Downs* v. *Fuller*, 2 Met. 135.

2. The ten deeds, of a tenth part each, embrace a title to the whole.

What was there left, or what had Cassa E. Collins to convey?

All the interest she had in the land was a right of dower; and her quitclaim of her "right, title, and interest" was intended to be, and was, merely a release of her right of dower.

The title disclosed by the complainants' deeds is to the whole, in tenth parts (if the objection made to the conveyance from Haskell is not sustained), and a release of the widow's right of dower; but if that objection is sustained, they show title to nine-tenths only.

*Blethen* v. *Dwinel*, 34 Maine, 133, decides that " in the absence of other evidence, a quitclaim deed raises a presumption that the grantor had sufficient seisin to enable him to convey, and also operates to vest the legal seisin in his grantee."

The " other evidence " introduced by the complainants, consisting of ten deeds of an undivided tenth part each; nine deeds of warranty from nine heirs of Aaron Collins, the other a deed of quitclaim from a party (Haskell) claiming under the tenth heir, controls the " presumption."

According to the complainants' evidence, the title was in them, and the widow could have had nothing in the estate save a right of dower.

Had the complainants introduced the deed from the widow only, and then stopped, they might have brought their case within the principle stated in *Williamson* v. *Carlton*; but they went further.

To be sure the "widow might have become the sole owner;" but the ten deeds introduced by the complainants, show that she had not.

The respondents are attempting to "use" Haskell's judgment against John C. Collins "adversely" to these respondents, in trying to compel them to pay for flowing a parcel of land, of which they claim to be sole owners, when, in fact, they own but nine-tenths of it.

If the levy is void, and the complainants still prevail here, could not John C. Collins avoid the judgment, have his tenth set off on petition for partition; or some grantee or creditor of his do so; and then upon complaint for flowage compel the respondents to pay the past and future flowage of that tenth again? The respondents have a right to protect themselves from paying twice for the same thing, by impeaching such a judgment.

The respondents' brief statement denies the complainants' title to the land flowed, which allegation is made good by showing that they own only nine-tenths.

*J. W. Knowlton*, in reply, contended

That *Williamson* v. *Carlton*, *supra*, was precisely in point; that other deeds were introduced in that case too; that the complainants there were not as here in possession; that there is no evidence that Aaron Collins had ten children; or owned all the premises in his lifetime; or that he died seized of the same; or that Cassa E. Collins had only a right of dower. All these facts could have been easily proved if true, and should be to overcome the complainants' *prima facie* case, or judgment should go for them.

DANFORTH, J. The only question raised in this case relates to the title of the complainants to the land described in their petition.

That they are the owners of nine undivided tenth parts is conceded. The other tenth is in dispute. To maintain their title to this, the complainants introduce a quitclaim deed, from Joel W. Haskell to themselves. It, however, appears that Haskell claimed

under one John C. Collins, by virtue of an attachment and levy. During the pendency of the suit, in which the attachment was made, Collins was not an inhabitant of this State, had no notice except by publication, and made no appearance. Judgment was entered on default and execution issued within the year, without filing the bond, as required by R. S., c. 82, § 4. This being contrary to law, the execution and the levy under it were not voidable merely, but absolutely void. *Penniman* v. *Cole*, 8 Met. 496. And it is immaterial who the adverse party may be. *Downs* v. *Fuller*, 2 Met. 135. *Smith* v. *Dow*, 51 Maine, 21, and cases cited. As Haskell took nothing by his levy, his deed conveyed nothing to the complainants; so far as appears, the title to this undivided tenth still remains in John C. Collins.

But the complainants further claim title by virtue of a quitclaim deed from Cassa E. Collins. This deed covers all of the premises described in the petition. In it, as we learn from the argument of complainants' counsel, the grantor describes herself as the widow of Aaron Collins, and the land, " as all the real estate that the said Aaron owned at the time of his death." This would convey her interest in the land owned by said Aaron at his death, obtained by her as his widow, and would seem to be an appropriate description for this purpose, and not for any other. It recognizes the title of Aaron at his decease, and suggests no change of title other than that made by the law of descent. It does appear that she had a right of dower in the premises, but it does not appear that she had, or intended to convey, any greater estate. It is also evident that the complainants did not rely upon it as conveying any interest greater than that of dower, from the fact that they have taken and produce deeds from the several heirs, purporting to convey the remainder of the estate. Giving the deed, then, such a construction as will best give effect to the intention of the parties, it conveys but a right of dower. Nor will it avail the complainants if we so construe it as to convey a greater interest. As already seen, it recognizes the title of Aaron Collins as better and prior to that of the grantor. There is no proof that he ever parted with his title, ex-

cept by death, nor that his title ever became vested in her. It having been once in him, the presumption of law is, that it so remains until there is proof to the contrary. In this case there is no proof to the contrary, except the deeds from the heirs, one of which, as we have seen, conveys nothing. The result is that the complainants have proved a title to only nine-tenths in common and the widow's dower. Under such a title the complaint cannot be maintained. *Tucker* v. *Campbell*, 36 Maine, 346.

*Complainants nonsuit.*

APPLETON, C. J.; CUTTING, WALTON, and DICKERSON, JJ., concurred.